May it please the Court, Julie Hall with Denise Young, habeas counsel for Robert Comer. As indicated in its recent order, this panel is prepared to hear argument on the serious constitutional violations that occurred during Mr. Comer's trial and sentencing. What right do we have to do that? Your Honor, obviously there are questions this Court has to answer first. And I think probably the most sensical way to me is to take them in sort of a reverse order from the most recent. And that would be the sealed motion to strike the end. Well, no, my question is you, I'm saying what, what ability does this Court have to reach the underlying constitutionality issues about conviction or sentence before deciding whether Mr. Comer's request to withdraw this, the appeal is confident and voluntary? There are actually three ways, and it may depend on what you mean, Your Honor, by reach. The first way is that this Court can find that this Court cannot find Mr. Comer's requested waiver competent and or voluntary. And at that point you can't. But my question was slightly different. My question was if his petition to withdraw the appeal is competently made and voluntarily made, then why isn't that the end of our inquiry? Well, First Your Honor, there hasn't yet been a determination by this Court that his waiver was competently and voluntarily made. I understand that, and it's not my question. My question is, if it were the case that his decision was competently made and it was voluntary, then upon what basis can we or should we, are we allowed to reach the issue of the constitutionality of the underlying conviction and sentence? And there are two ways, Your Honor, to reach that question. And the first is, as we suggested in the – as we argued in the brief on the Court's question, the supplemental question in January, that Mr. Comer – it's agreed that Mr. Comer's waiver must be knowing and voluntary, as you said, and part of the knowing component is to know all the relevant information that this Court and that his attorneys can give him about his situation. I don't know why this Court can give him any information. It's purely speculative. Well, there appears to be an advisory opinion, something that we can't give. There are very unique circumstances in this case, Your Honor. And that is that this Court does have jurisdiction over the case, unlike a number of cases decided previously. Like we have jurisdiction over any or district court has jurisdiction over decisions to withdraw the entry of a plea of not guilty. That doesn't mean you can't do it. That's right, Your Honor. Nor does the Court give you an advisory opinion about what it's going to do if you don't. It wouldn't be an advisory opinion, Your Honor. It would be in the lines of this Court providing information. It wouldn't even be saying that the opinion wouldn't be. What's not advisory about providing information? Everybody, I'm sure, would love to know what the Court's going to do before they decide to settle or anything else. And what was unique about this case, Your Honor, is that before the waiver was made, the case was fully briefed and prepared for argument. Well, so does the timing of it have something to do with it? I think the timing is. Does it make it less voluntary because it's already been briefed? Or less, I mean, less advisory if it's already been briefed? It makes his decision less knowing, Your Honor. I think the timing is critical, that in cases like Gilmore, in cases like Whitmore, where the waiver was made before the Court had any opportunity to look at the merits of the case, to come to a decision on the case, which was our understanding of the supplemental question, was suppose there is – suppose we know the answer. In other words, what you're saying is that he really can't make an intelligent waiver unless he knows what the outcome is going to be on the merits. That's right, Your Honor. This issue doesn't – Why don't you just say that? We've already spent five minutes here. I apologize, Your Honor. He can't say it because there's no basis to say it. I mean, what basis do you have to make that assertion? I think it's the unique circumstances in this case, Your Honor, that the Court – the Courts make decisions on questions that determine the outcome of litigation. For example, defendants file motions to suppress before trial, and Courts make a determination on the suppression argument, whether, at trial, this evidence will come in.  The Court's not granting relief. The Court is providing information. And sometimes that's determining – It's not determining a ruling on a matter that's live and before it. It has to decide whether a piece of evidence is legally admissible or not. So it makes a decision. And certainly in this case, the matter is live before this Court about the knowing that – The decision to withdraw the appeal is granted. Although I don't think there's anything in the law that prohibits this Court from insisting, Mr. Comer, in making that knowing, making – ensuring that this is a knowing waiver. If the most – Counsel are for, yes? Counsel, I can't give Mr. Comer any advice. I'm not a member of the bar. And I – you know, at KBS Counsel, we've done our best to advise Mr. Comer about – you know, to the best of our ability about what the outcome of these proceedings might be. But Johnson v. Zirch requires an intentional relinquishment of a known right. And if that knowledge exists, as the question posed to us supposes, that knowledge does exist. What Mr. Comer testified in the evidentiary hearing that he had consulted his lawyers, he revealed a rather sophisticated understanding for a layperson about the options that he had, about he recognized that his counsel had advised him, they thought he had a pretty good shot, might have a good shot, might have a very good shot at winning the underlying merits, and he said, fine, I understand all that. Although what Mr. Comer's – what the most recent filing – what the most recent filing from special counsel indicates, and there's an exhibit attached from Mr. Comer, and in it he says, my convictions and sentences are valid. And so it indicates – He said his convictions are valid because he did it. But he also recognized that his counsel had advised him that there may be legal grounds upon which both could be vacated. And he says, I hear that. And our position, Your Honor, is what might happen, if we know what would happen, then that's a far better decision, a far better fact. Of course it is. If you know what's going to happen before any case is settled, it would make a monumental difference. But that's not the role of courts. Courts don't have the power to give advice in advance. Well, and I think also, Your Honor, that this question was very much informed by special counsel's brief on the supplemental question, which asked this Court to grant relief if Mr. Comer's convictions and sentences were invalid. So that, on behalf of Mr. Comer, was a statement that, at the very least – I mean, in one light, that's a statement that this Court should decide the merits of this case. But at the very least, that indicates to this Court that's important information that Mr. Comer should have if it's available. Counsel, I look at the case a little differently. I don't look at the case as a matter of whether or not a person can waive a death sentence. The question to me is, can the state execute somebody when the death sentence is illegal? Well, Your Honor, I – Yes or no? No. All right. Now tell me why you say no. The Eighth Amendment, and we're seeing it everywhere we look in capital jurisprudence, the Eighth Amendment is evolving. And Gilmore and Whitmore, in cases that were decided then, I think – our standards have evolved since that time. And I think it would shock the conscience of any court for a state to carry out an execution that was illegal. And the only way we can determine whether or not the sentence was illegal is to have this hearing. That's right, Your Honor. All right. And – Now, why was the sentence illegal? Let's assume – let's assume, just for the sake of argument, that the waiver was – was validly executed, loyally, intelligently, willfully, whatever test you want to give. Now, why shouldn't – why shouldn't that overrule an illegal sentence? Obviously, there's language from the Supreme Court in Gilmore and Whitmore that essentially says that doesn't matter. And I couldn't agree that that language is terribly troubling, given what we know about the death penalty today. But those cases are still precedent that this Court must follow. Now, you asked also, Your Honor, why – why are the convictions and the sentences  And there are a number of reasons. And the two primary reasons are that Mr. Comer was sentenced to death while he was – it occurred after an intense, brutal struggle in the jail where he was taken down with a water hose – a fire hose and beaten into the concrete floor of his cell and then handcuffed to a wheelchair because he couldn't even stand or walk and was only – had moments of consciousness, wheeled into the courtroom naked and slumped over and bleeding from his head, and that's how he was sentenced to death. Well, the – we know all that. We've got pictures of all that. Now, Comer was in the courtroom at the time of his sentencing hearing, unclothed, and the judge was looking right at him, right? That's right, Your Honor. But the judge couldn't tell whether or not he was – he was conscious. That's right, Your Honor, and in fact – Well, the judge had to have a hearing the next day when Comer wasn't there to determine whether or not he was conscious or not. That's right, Your Honor. But he couldn't tell, looking at him, whether or not Comer was conscious, yet he sentenced him to death. That's right, Your Honor. In fact, Dr. Potts, the psychiatrist, the jail psychiatrist who had witnessed the incident and conducted some kind of cursory mental status examination – I'm not even sure what to call it – he couldn't say for certain that Mr. Comer was conscious. He said, well, he was the last time I checked. And Mr. Comer's answers during – to the extent he gives answers during that sentencing proceeding don't reflect any kind of competency whatsoever. And we know that the judge did have a bona fide doubt as to his competency, because as you said, the next day, without apparently much notice to counsel, because it happens the next day, without the opportunity for counsel to obtain experts and comply with the requirements for a competency hearing under Arizona law, including one of the most important constitutional requirements, Mr. Comer's presence, the judge conducts the post-sentencing competency hearing. So there's no question there's a bona fide doubt as to his competency, and that competency hearing does not address those doubts, does not overcome those doubts. And so I think that is – and then, of course, there's the right – another right that Mr. Comer lost by not being confident and not being conscious through much of that proceeding, and that is his right to allocution. And that's a right he wasn't able to exercise in that proceeding. And so that is a – You know, when you argue for judges, we're a little older than you, and you're going to have to keep your voice up. Oh, I'm sorry. Am I wandering over here? No, that's not a microphone. Oh. You're going to have to speak not conversationally, but you're going to have to speak like you're already into it. Will you? Will you do that? I will, Your Honor. All right. I can't be loud. And there's another – and there's a second issue that makes Mr. Comer's convictions invalid in addition to his sentence being unconstitutional, and that is the prosecutorial misconduct that occurred during opening argument and – but more so even during closing argument, in which the prosecutor argued that Mr. Comer was a monster and filth and the reincarnation of the devil. And the prosecutor weaved those dehumanizing epithets into his closing to argue to the this evidence of the non-capital counts that was terribly inflammatory and prejudicial evidence. Apply that to the capital count and convict Mr. Comer because he was a monster, because he behaved like a monster later that – later in the night of the murder. He must have behaved like a monster at the time of the murder, and that was so critical because the question – the very close question in this – at trial was premeditation and whether the – and whether the killing was intentional. What is there in the record that shows why Comer changed his mind? He was convicted and he was sentenced and he filed an appeal claiming that the guilt phase was wrong and the sentencing phase was wrong. And then about five years later, he changes his mind. He says, I now want to be – I want to be executed. Is there anything in the record that indicates why, what happened in the interval that made him change his mind? There's – there's powerful evidence in the record, Your Honor, and it starts all the way back in 1997 with the letter from Mr. Comer's beloved friend, Amy Young, who tells then-Haiti's counsel, now Judge Eckerstrom, exactly why Mr. Comer doesn't – is thinking of not proceeding with his appeals. And she says it's because he cannot live in those conditions, because he cannot continue to exist like an – like an animal, like a non-human under the conditions. And she says to Mr. Eckerstrom – to Judge Eckerstrom, you know what his history is in the prisons in California. And that – and all of that, and what he's going through now, the torture he endures now explains why he doesn't want to proceed with this appeal. And so way back in 1997, there was an indication that that was motivating his decision. And then the letters that Mr. Comer and some of the declarations filed in the district court, all letters that weren't prepared for the purpose of litigation, unlike his testimony, which was very carefully prepared for the purpose of this litigation. Sotomayor, that's the reason that there was an evidentiary hearing. And we remanded for it, and Judge Silver held an evidentiary hearing and made 92 pages worth of findings to ascertain whether his decision was made on account of his conditions of confinement. And again, that's – there are two unique factors there that play into that.  And so while Judge Silver's court was the appropriate arena for gathering facts, taking testimony again, this Court is the court that is responsible for examining that evidence and making a decision, making – actually making those findings of fact, not deferring to another judge to make that decision. We have to make the decision, but we sent it back for an evidentiary hearing for fact finding, which has now been done. And I'd like to save a little of my time for rebuttal if I can, but that's an important question, so I'd like to answer it. What Judge Silver did was also unique – that was also unique in this case was to make a videotape of Mr. Comer's testimony. And so as to the one aspect of the fact finding that Judge Silver arguably might have been in a better position to make findings of fact, she actually wasn't. She said on the record, oh, that's true of a confinement. That's true of reading any document or anything else. I mean, that doesn't say anything. I mean, she – we wouldn't have remanded if we wanted to – or we thought we were capable of making fact finding ourselves, which we're not. So we did what the Supreme Court said to do and sent it back for fact finding. Right. And I agree that this Court wouldn't be the appropriate forum for an evidentiary hearing itself. But Judge Silver was in no better position to make decisions about those facts. And actually, even though she went – Are you talking about her conclusion and you're arguing that that's a conclusion of law? Is that what you're arguing? That is – well, that is an important point. There's a distinction even as to the facts, Your Honor. As far as historical facts, which are what the district court, the lower trial courts typically find, those facts really weren't in dispute in this case. What happened to Mr. Comer in California? What happened to Mr. Comer in the Maricopa County Jail and in the Arizona prisons? For the most part, not – were not disputed. So what's the point you're making? The point is, Your Honor, this Court is – has to make those findings regarding competency and voluntariness independent of what Judge Silver found. And what's your authority for that? Rees v. Payton, Your Honor, when the waiver was made in the – of a – an attempted waiver of a cert petition in the United States Supreme Court, the Court remanded to a district court but called it an initial step and said, ultimately – you know, that was the initial step, to gather the facts in the district court. But the Court said, ultimately, it will be our decision to make. And so that's the controlling authority for this Court, that it is – that the waiver is before this Court and it's this Court's responsibility to handle that waiver. Okay. Thanks. Thank you. Good morning. Michael Kimmerer, Special Counsel for Robert Koehler. And let me start out by briefly relating how I got into the – Are you paid by the State? Yes, I am, Your Honor.  Pardon? Is there a conflict? By being paid by the State? Good question. I have not – I have not thought about that. I was asked by Judge Silver to step into the case when this Court remanded it back for the findings on the issue of voluntariness and competency, and at that point in time, Mr. Comer did not want to have anything to do with his habeas counsel. As a matter of fact, he didn't want to have anything to do with me when he found out he had lawyers appointed because he didn't want lawyers involved in the case. And after our appointment in the case, I and Holly Giesel went to talk with him, spent a great deal of time with him. One of the first things I addressed was, you have to know, Mr. Comer, I don't believe in death penalty. I said, but I am capable of representing what your interest is, and I will not let my own personal interests override your representation. And we became clear about that. I also told him that first time that I wanted to judge myself whether he was competent or not just from my own personal belief in dealing with him. I spent probably two hours with him that day. At that point, here was a man that talked about every issue in the case, knew what was going on. I had a better discussion with him about his case and what the issues were and why it was in the situation did than I've had with most lawyers. He was very clearly, in my mind, competent to understand what was going on. I went ahead and proceeded to represent him. At that time, he developed a relationship. Let me ask you this. Your position only has to do with whether or not he was competent to waive. Yes. You're not saying that his sentence was illegal? Not saying his what? You're not challenging the sentence? No, because that was not really my role in the case. Whether or not this sentence was legal or illegal. That's beyond your appointment. But I had to take that into consideration. And I did tell Mr. Comer the first time I saw him that when I looked at those briefs, I thought he had very meritorious issues. I thought he had a good chance of overcoming his death sentence. I thought, based upon what I saw, it was an improper death sentence the way it was handled in the procedures he used. That was my opinion. And I told him that. And I thought he had a chance of having some kind of positive result on his appeal with this court. And he says, I understand that. I have been told that. I know that. That I have still made up my mind that I want to waive my appeal. And he knew the consequences of that waiver. But I thought he had a very meritorious appeal. And I told him that when I first met with him. Now, during the course of all of the proceedings that have gone on now over two years, we've had a great deal of communication with Robert Comer to keep him advised on a regular basis of what was going on. At no time during that period did I ever see him waver in what his belief was and what his wishes were. The latest, just so the Court knows, was yesterday. Spoke with him almost an hour yesterday on the phone. Went over all the issues again with him. Actually went through the same colloquy that Judge Silver went with him at the evidentiary hearing. Used the same questions to say, you know, is this still your answer? Is this what you want to do? And he was very clear that this was what he wanted to do. And I even addressed the Court's special question. I said, look, the Court could find here that you could have, you know, you're going to be convicted to be reversed. You could have a new trial. You could be resentenced. Do you still want to waive your appeal, knowing that that may take jurisdiction away from the Court and your appeal won't even be processed? He says, no, I still want to waive it. However, he says, if the Court decides they still want to go with the habeas appeal, that's fine with me. I will cooperate in that. But my wishes are still that it be dismissed. He did it, was very adamant. He said, if that happens, though, I want new habeas counsel. I want my motion to dismiss my counsel to be granted. And he went on again in very thorough knowledge about the case, understanding what went on about all those procedures. Death was easier than living to him. It's interesting how he's arrived at this, because I heard your question before. When did he change his mind and what happened? And, you know, I've really explored that question, because I'll be honest with you, through this process, I've tried to, in my own way as a lawyer, which we deal with our clients, persuade Mr. Comer, go on with your appeal. You know, you've got the Court's attention. You've got the prison's attention. Let's follow this thing through. That he has really got a very, and I think in some ways I admire how his thought process has gone. He said it started with his friend Amy Young. And he says that's what started opening his mind, he says that in maturity, to start to see what I had done in my life. He says I learned to appreciate basically how horrific my crimes were. He says I don't deny those. They happened. I did it. You know, I don't believe in the death penalty either. But I still believe, you know, that I deserve the punishment society sees fit. If the death penalty is it, that's where I want to go. And that's what I'll do. I'll suffer those consequences. I'm at peace with that. One of the things that I've tried to. That's different than the waiver. Pardon? That's different than the waiver when he says I'll accept what society imposes on me. That's a lot different than the waiver. Well, I'm trying to articulate the thought processes that I think he's going through. No, I say the waiver is different. But then you go on and ask the question, now with that and with the factual knowledge about what all these things are, are you still wanting to weigh this? And he will say yes. And I've just kind of started giving his thought process. And I could probably take my full 20 minutes talking about how Robert Comer thinks. And somehow it's integral and important to understand how he thinks, because when you look at the conditions of Folsom and what he went through at Folsom, and to some extent at SMU1 and SMU2, there's no question those are horrific conditions. I think the secret about Robert Comer and probably why he is so competent is he is a person that's learned how to survive those conditions. When I've had conversations with him, he compares it to the Auschwitz, people in Auschwitz. He says, hey, I was nothing like that. He says, and he says it in the evidentiary hearing. He says when he says SMU2, he says, you know, it's heaven here. You know, Folsom was hell. Now, I was on a tour with Judge Silver when she went through the prison and looked at the cells. We went through everything. When we were there, Homer basically treats his cell, which is very small, but to him that is his home. And it was almost like going to a neighbor's house and him inviting you in. He related to all of us. He talked with us. He talked about the things. He talked about the lexan on the things, that it doesn't bother him. In some ways, he preferred it because it gave him more of a sense of privacy. You know, there was only one incident when it was a heat problem there, and that was when someone turned the heat up too high and he got that adjusted. But one of the things... Did he tell you that he was born a blue baby? Yeah. We did talk about that, but what that was is because the mucus was in his throat, and there was, I think, the... The cord wrapped around his neck. The cord wrapped his neck, but there was... Blood couldn't get to his head, so... Yeah, but there was no evidence... There was no medical defect the day he was born. Yeah. There's no evidence in the record that that caused him to suffer any defect. As a matter of fact, if you look at the testing records in this case... Medical knowledge says it has to. Well, that doesn't show up in the records. And all I can tell you, usually the impact you see there is basically a mental incapacity. Now, he's got an IQ of around 115, 160, which is at the high level range. And when you deal with this man, listen to what he says and what he talks. This is not somebody that's disabled mentally. Now, as far as I know, in terms of the prison and the fights he's been in and the stabbings and everything else, physically he's in pretty good shape too. He's a survivor. And he takes pride in that. And that's one of the things that bothers him, and quite frankly, why he didn't like Capestown. He says, they're taking away my right to choose, my choice in life. And he says, I want to have the choice. That's my dignity. Let me have that humanity to make a choice about what I want to do. He says, I'm competent to do that. In everything I have seen, and I believe the record, the evidentiary hearing, there was probably one of the most thorough evidentiary hearings on competency that I've ever went through in my 30 years of practice. Judge Silver did a fantastic job, was extremely thorough. And all of that came out, as I see it, that he was competent. You've got Dr. Coopers who said he wasn't. But I think Judge Silver did a very good job of comparing Cooper's analysis against Dr. Johnson's analysis and really came out with the right conclusions in this case and the right factual basis. Let me answer this question. It kind of crosses my mind. Let's assume, all right, it's a given, that the sentence imposed was illegal. All right? Illegal. Mm-hmm. Now, excuse me, Your Honor. We're talking about an illegal death sentence as opposed to a state that shouldn't have a death sentence. We're talking about an illegal sentence imposed by a state that has a death sentence. Okay. All right? Whatever it was, the balancing, the aggravating and the mitigating, or if that sentence were imposed today, there would be problems because of the way the facts were found. Right? Right. So let's say it's a given that the sentence was illegal. Yes. Now, can a defendant, knowing the sentence is illegal, waive his appeal and say, I want to be executed? That's a hard question. And I know that's what you addressed. Let me see if I can answer it. I'm asking you. And it's a tough question, I think. Even though, and I was kind of, my first, when I saw that question presented by this Court, just my own logic went through the mind. I came out. I don't think that he could be executed if you have an invalid or an illegal sentence. Then I looked at the Gilmore case and cases like that and said, okay, I'm probably wrong about that as far as the law goes. I'm not sure I agree with that reasoning. I think it's wrong to basically, even if somebody wants to go ahead and say, I die, if it's based on an invalid conviction, does the state have the authority then to come in and go ahead and execute somebody, knowing that that's an invalid conviction? Now, at this point, you know, as Judge Reimer points out, I don't know. I can't divine what this Court's going to do. But I can look at the record and if I was in the Court's position, I'd reverse this conviction, but that's me. Well, I've given you a hypothetical. Yes. And you answered it. Will I answer it? Yes. Well, your answer is assuming that the Supreme Court has done what it did in Gilmore and Whitmore. Yes. That's my answer. Assuming, I'm fine with it. I don't want those assumptions. I just, I'm just asking you. Well, I know. Let's disregard the Supreme Court's laws. May I ask my question? Yeah. I'm trying to get a clarification. I'm trying to get a clarification of mine. I've been listening to you for a long time. I just asked you that one question. Assuming the sentence is illegal, all right? Yes. Can the State impose it on a man who says, I want to be executed? Personal response, direct response, I think the most logical response and the response that's right, and I have to set aside Gilmore and ignore those opinions, I would have to say, no, I don't think they can. But that's not supported by the law. The State would be involved in an illegal act. That's what I would believe, personally.  The State would be committing a murder. I'm trying to figure out if it's first degree or second degree, Your Honor, but yes. But I don't have, I don't want to, you know, I'm supposed to sit here and talk to you about law and be a lawyer that I have to honor what the courts say. So that's where I came out on law, but you ask me personally, that's where I come out. All right. Thank you. Thank you. May it please the Court. I'm John Todd. I represent the Respondent in this matter. And I'd like to begin where Mr. Kemmerer left off. He said he's a lawyer. And this is a court of law. And he's obligated to follow the Supreme Court, putting aside his personal opinions. And I believe that's exactly what this Court will do, is follow the law. This case really boils down to two things. The first is, concerns jurisdiction. The second concerns the overwhelming evidence of guilt in this case. Now, because the record supports the trial courts, the district courts, finding that Mr. Kemmerer, excuse me, that Mr. Comer was confident, and habeas counsel doesn't even disagree that he obviously knows what's going on, and the record supports the district courts finding that his decision to waive his appeals is voluntary, that means, as a matter of law, clear Supreme Court law, controlling on this Court, is this Court has no jurisdiction whatsoever. Now, under Article III, there's no jurisdiction to do what? To proceed with this case. As this NICIRC has already recently found in the Germanimo case I cited previously, you have, as a matter of law, you're without jurisdiction to proceed under Article III. So that ends the case. But even if the district court had jurisdiction to determine that he was competent? Say again? Did the district court of the District of Arizona have jurisdiction to decide whether or not Comer was competent when they waived his right to appeal? Yes. The district court had jurisdiction. Now, therefore, why don't we have jurisdiction over that issue? Once you decide the first issue under the law you must decide is whether he was competent and whether his waiver was voluntary. It's a question of jurisdiction. Once you, Your Honor, once you decide that question. Yes. See, we had jurisdiction before that issue was decided. Yes. Didn't we? Now, why didn't we lose jurisdiction? Because once. Once we have it, we lose it? You lose it once the. . . What case do you say says that? All the cases that I cited in the brief, all the cases referred to here, Gilmore, Whitmore, that once. . . You're reliant on those cases? Yes. And the recent Ninth Circuit case. In those cases there wasn't an illegal sentence. There's been no illegal sentence in this case, particularly from the standpoint of the State. Let's talk about the overwhelming evidence in this case. I know this Court has said that in its view there's serious constitutional issues. In the State's view, we disagree that the. . . First of all, there was no dispute concerning the kidnapping counts, the counts, the noncapital counts where he's sentenced to 339 years. There's no dispute against those in the trial court or here. The only dispute in the trial court was whether it was first-degree murder or second-degree murder. And the evidence of first-degree murder was overwhelming. I mean, he took out a revolver, put it through the guy's ear, this disabled individual, pulled the trigger, shot him, then later came back with two inch, two and a half inches. He stabbed him about the Adam's apple and took the knife about an inch across the throat. There is. . . The evidence is overwhelming that this is a first-degree murder case. You. . . Counsel mentioned the only two things she mentioned as to why they felt this case was not an overwhelming. . . It was that there was constitutional error was the sentencing first, because he came in after he had a knife in the his cell. He refused to come. They had a shank. Shank. Yes, the shank. They didn't want to send the dog in for fear they would he would kill the dog. So they brought him to court, and Judge Reinstein says to him, I understand you don't want to be here. And he says, I'm here, though, with a little help from my friends. His sort of calmer sense of humor. There's no question he was competent at the time of the sentencing. The. . . The judges didn't even know if he was awake or not. Like this Court, the judge was concerned to create a good record. He. . . Just to be sure. Just to be sure that there was a good record. And he had asked Dr. Potts before sentencing, does he, is he understanding. Then afterwards, he asked Dr. Potts to come back in and to lay out, you know, what happened, just so that this Court would be apprised and any other court of what really occurred there. This is just being a good judge. It doesn't show that he couldn't tell from the bench whether he was awake or not or hearing or not. I mean, that first initial exchange, one shows he's, he was, understood what was going on and shows his humor. Two doctors testified by affidavit that he was crazier at that time. When he was at the sentencing hearing, unclothed, didn't know whether or not he was conscious or not, they testified on their oath, very competent, very competent medical doctors, that he was crazier. Now, how do we evaluate that? Well, I don't, I don't recall that in the record. I recall. It's in the record. I don't doubt, Your Honor, if you say it's there, I'm sure it is. The only affidavit I recall is one from Dr. Potts, and that's somewhat at variance with his affidavit at the time. Not with his affidavit at the time, but with his testimony at the time. See, it's very peculiar that they didn't use the word crazy. They used the word crazier, which meant that he was more crazy when he was there than he was before. That could be. But even his own habeas counsel say today he's not delusional, he's not paranoid, he's not psychotic. They readily admit that he understands the proceedings and he's made a conscious choice, and it seems as a court of law we should honor his free will. I mean, he wants to have control over this aspect of his life. As a court of law, it is appropriate, particularly in light of the overwhelming evidence. There's no question of guilt or innocence in this case. I mean, if this was a case where there was a difference, a question of guilt or innocence, you know, there would be all sorts of other issues here. But that's not this case. That is not this case. Well, as far as that issue is concerned, I don't think there's much doubt on that. But then the question is whether, you know, the hypothetical that I put forth to habeas counsel, if you have a situation where the imposition of the sentence is constitutionally defective, can a defendant waive his right to appeal and, in a sense, ask for his estate to execute him? My understanding of the law is, Supreme Court precedent, that a competent defendant can waive any constitutional right. He can waive his right to a trial period, let alone a fair trial. We know from the Sumlin case that the Court has found Mr. Sumlin's sentencing to be unconstitutional, because it was the aggravating circumstances were found by a judge rather than a jury. Nevertheless, the Supreme Court said he can be – his case can proceed, even though as we look at it today, that was, quote, unquote, unconstitutional sentencing. That's because the – that's the way the law is. It has to balance different inferences. Here our position is there was no unconstitutional sentencing, that he was properly sentenced under the law of Arizona at that time. The – since statehood, virtually except for two years, the people of Arizona said, we believe that for our State, the death penalty is appropriate. I know. I know. I was asking you a philosophical question. Okay. A philosophical move today. See, a defendant in a criminal case, no matter how – whether it's a misdemeanor or whether it's a death penalty, has a right to plead guilty if he's competent, right? Yes, Your Honor.  There's no question about that. But see – but we know that the Supreme Court has held time and again that death is different. And it then comes down to not a waiver of death, but whether or not a state can execute. And that's the – that's the issue that I view in this case. Does the state have a right to execute somebody when the sentence that the state imposed was illegal? In spite of – in spite of a valid waiver of that – of that illegality. Is it a civilized nation that permits that? Or is it an uncivilized nation that permits the state to execute somebody illegally? And we're talking in terms of some sort of constitutional infirmity with the sentence. Yeah, yeah. And I believe under – Let's not talk about competency or anything. Let's talk about he didn't have a lawyer. Do you sentence somebody who didn't have a lawyer even though he waived it? Well, if he didn't have a lawyer, that would be a different matter entirely. Here, Mr. Comer has had – Well, so it's a degree of illegality then we're talking about. No, that goes right to the waiver itself. But the – we waive – we make decisions to waive different rights all the time. If we're competent to do so and if our decision is voluntary, then the Court should honor our – our wishes as citizens. And the Constitution doesn't impose – doesn't impose rights upon us. It protects us from the State. And Mr. Comer understands this. He understands, you know, what he's facing. He understands – he might even have a rosy view as to his chances of success in this appeal. And, of course, this Court is not the last word on – on even the merits of the case. But the – he understands the choices he's making. He's competent to make them. He's voluntarily, repeatedly, for five years now, for five years, he's been steadfast in what he wishes to do. How can this Court deny him that right? It doesn't seem reasonable. It doesn't seem fair. If the – I mean, just – a person has the right to ask another entity to kill that person? This Court isn't asking anybody to kill Mr. Comer. And Mr. Comer is not asking anyone to kill him. And the – Mr. Comer is saying the people of Arizona said this is the fit and appropriate punishment for what I've done. I know I'm guilty. I'm remorseful. I'm truly remorseful this time. I want to make amends. I want to have some dignity in my life. I want to leave this world with some dignity. And should we deny him that choice? It doesn't seem right to me. It doesn't seem what a court of law is in the business of doing. No, we're not saying he should be denied that choice. I think, you know, the question that's been posed, if that's his choice and the – and he waives his appeal, and somehow the sentence imposed on him is illegal, can that sentence be carried out by the State? Sure. He wants – he said he wants to die. And he's done terrible things and all that. But that's – you know, the final question, that's the one that Judge Ferguson posed. And I understand, I think. But, again, you know, regardless of our personal choices or desires, we operate in the framework of the law. And the law has said, as I understand the Supreme Court cases, that in a circumstance such as this, it's appropriate that the State, who has a valid death penalty, it's been imposed for – in a lawful manner at that time. He should have his right. If that's – if he wants to waive his appeals, then he should waive it like he can waive his right to trial. Let's talk about – we're talking about the right to kill. Now, assume – assume a murder case where the victim tells the defendant, I want you to kill me, and the defendant kills him. Is that a defense to murder? My understanding of Arizona law, it would not be a defense to murder. Okay. So there cannot be – there cannot be a consent to murder. There cannot be a consent to kill. You cannot in that – in that context, you cannot have a consent to kill. Well, I'm talking about any context. Well, it's a –  Well, if the people of the State, through the representative – But somebody wants to be killed. That's what I'm talking about. Well, it's not as if Mr. Comer is just somebody off the street who wants – who suddenly decides he wants the State to execute him. This is an individual who's admitted killing two people. He – before he even got into the California prison system or into Folsom, he raped a 14-year-old girl at night point, and he stabbed some other person at Taco Bell in the gut. You know, he's a terrible person. You know, we're not – we're not saying he's a choir boy or anything like that. Right. And I understand, but I thought Judge Ferguson's question went to some person just off the street who decides he wants to be killed. That's not Mr. Comer. Mr. Comer wants to atone for his sins, and we should not stand in the way. That's just wrong. Well, to put it somewhat differently, Mr. Comer wants to withdraw his appeal. Yes. Of his habeas petition denial in the district court. That's correct. He has got a final conviction and a final judgment of sentence.  Yes, that's presumed. He was appealed through the system. Right. Including to the U.S. Supreme Court. Right. So there is a final conviction. And there's a – Both of sentence and of – I mean, a final judgment of sentence and conviction. Absolutely. And that's presumed correct. So what he has done is to request that his petition for review of the denial of his habeas petition be withdrawn. Correct, Your Honor. Not to put too fine a point on it, but that's what he wants to do. That's correct. Our decision is whether he has knowingly and voluntarily made that decision. That's absolutely correct. That's the legal issue. I was getting too philosophical there. Yes, Your Honor. That is the legal issue. And our position is that the record demonstrates that he was confident and it's voluntary. And therefore, this Court is without jurisdiction to proceed further. Okay.  Thank you, Your Honor. Some rebuttal. Two primary points for rebuttal, Your Honors. And the first is to Judge Reimer's question regarding whether this would be an advisory opinion. And in the cases cited in our brief on the supplemental question, particularly the Nashville, Chicago, and St. Louis Railway case from the United States Supreme Court, the Court gave a number of examples of situations in which relief is not granted, a party is not ordered to do something, but yet rights are determined. And those were examples like boundary disputes between States, matrimonial determinations, and those are at stake. My question is a little bit different. And I don't know that there's any law out there on it, but it just seems to me to follow that if you decide that someone can withdraw an appeal, if you nevertheless decide the merits of the appeal, you are deciding an issue as to which there is no controversy between the person and the opponent, which is the State. And again, Your Honor, that goes to in every context that we can see that that question has ever been decided in the capital case, it comes within the context of a waiver that's made before the court's jurisdiction is engaged, or before a briefing is completed, before the court is presented. I understand the difference. We have jurisdiction over the appeal. I don't quarrel with that notion at all. And in that respect, this is different from an ex-friend standing situation. Okay? I understand that. Right. But if we decide that the appeal can be withdrawn, it's withdrawn so that there is no merits issue before us, and anything we were to say on it would be without a fight between the Petitioner and the State. Although before this Court can say that that withdrawal is made in a knowing manner, there's nothing in any of the precedent preventing this Court from telling the defendant what it knows, and that is that this is an illegal conviction and sentence. Well, Gilmour posed exactly that conundrum. And Justice White said, I think you need first to decide whether the Utah statute is constitutional. And that was his whole point. And I may agree with that. But the question that the Supreme Court, five of them, said, uh-uh. We're not concerned about whether there is constitutional infirmity in the conviction or the sentence. So here's my direct question to you. I mean, in light of Gilmour and Whitmore, and indeed there were two or three subsequent, whose names I've forgotten, in chambers, decisions that posed very similar issues that Justice Rehnquist said, hey, it's serious enough, given Justice White and four colleagues' view, to refer it to the full court. But obviously the full court didn't bite. So I read the tea leaves as being unmistakable that the issue is simply the knowing involuntariness. And if that's true, this Court simply has no license to do otherwise. Now, the Supreme Court can disagree. Today's Supreme Court could then review our decision and say, no, now we're going to agree with the Justice White position. And again, Your Honor, this case, I think, differs from all the previous cases in that what the Court said there was, we don't have to go out and find – we don't have to go find out. We don't have to find out whether this sentence is unconstitutional or disconviction because we don't know. But if this Court knows, then it presents an entirely different question under the Eighth Amendment. Okay. And finally, I just wanted to briefly address the question of what Mr. Comer knows and what Mr. Comer understands. And it is absolutely true that Mr. Comer is intelligent, and he is not psychotic. Mr. Comer understands, and he understood in the proceedings below, particularly once the special counsel was appointed and working with him to prepare his testimony for the evidentiary hearing, he understands exactly what he has to say to this Court to be allowed to die. But when you look at the full record, the credible portions of the reliable portions of the record that weren't prepared for the litigation, you'll find Mr. Comer's repeated, powerful statements that he cannot live as a human being. He cannot survive in that place as a human being. He cannot allow himself to feel, to think, to be a person. And that is what makes this decision involuntary. And he said to his habeas counsel, if there was any way to make me right, I'd try it, but there isn't. And so I got to get back to alone, to nothing, so I can turn off survive. A person who is in conditions that don't allow them to be human, that don't, after his unique history in the California prisons and his unique history in the Arizona prisons, when he says repeatedly and convincingly that he cannot be a human being and survive in that place, there is absolutely nothing voluntary about this decision, and so this Court should proceed to decide his case on the merits. All right. Thank you. Thank you. Briefly, Justice Reimer, addressing the last questions, I believe, when Mr. Todd was here in the statement you made, I believe that's exactly where we are in this case. And the question before this Court in the legal context is, was his waiver voluntary? Is he competent to do that? And I think the record shows that he is. I just heard Ms. Hall address the fact about his letters and all of those different things that came out at different times, and I think those were explained in the report by Dr. Johnson. They were explained by Judge Silver in her 93-page memo. A lot of those things are to get attention. He put things in context. He said they happened. But they also are things that never really broke him. I mean, he survived all of this and basically is probably kind of a remarkable person because of that, but he's never lost his competency or his right to make a choice. And everything I see in this case in the record here is that he made a voluntary waiver and he was competent to do that. And I think that's well supported by the record. And unless on the competency issue, you know, this is clearly erroneous, which I certainly don't think it is in this case, I believe that he is competent and can make the waiver. Now, having said all that, I'm certainly intrigued by Justice Ferguson and Justice Pregerson about your hypothetical, because I'm sitting here thinking, I don't get to this Court very often, and I realize that you have powers to do more things than I normally do when I'm in a State court or a trial court or a Federal court. And on that issue, when you asked about whether we're paid by the State, we're actually paid by the Federal government, not the State. And I started thinking about a guilty plea. And we go into clients all the time that they take guilty pleas, and a lot of times they take guilty pleas because our sentencings are so harsh and it's tough to find facts that they can find a plea guilty to. And the Court still has a right in that situation to sit down and say, I can't accept this guilty plea because there's not a factual basis for it. There's something wrong out there I have knowledge of. It doesn't fit. So analogizing that situation, and I know I'm getting out of my field here to this particular case, if I were sitting in your place, I could sit here and look. I said, I've seen the appeal in this case. I think that there was a very unconstitutional death sentence imposed, and very possibly an unfair trial, the way it was structured. The actions of the prosecutor, the severance, all of those different issues. Should I go ahead then, knowing that, and even though now a person comes up here and in fact says, I want to say I'm guilty, let him waive that? Or do I have a right to be more responsible and take a look at that? And that's my hypothetical I'll leave the Court with, and I thank you for the time. But all I want you to know is that Mr. Comer, everything I have seen, is he is confident to waive his appeal in this case. He wants to waive the appeal. He said that yesterday. And he wants to have his motion to dismiss habeas counsel granted. Thank you. Before you step down, I want to let you know that you're my kind of lawyer. Oh, well, thank you, sir. Thank you very much. But the question I have is, why were you appointed to represent Comer at the hearing to determine whether or not he was competent to waive the death penalty or to waive his appeal when that issue was vigorously argued by the State? Why were two lawyers appointed to represent Comer on that issue when one was perfectly adequate to do it? I don't really have a good answer for that. As you know, I got a telephone call from Judge Silver asking me, and knowing that I did not believe in the death penalty, asking me if I would step into the case and get involved in it as independent counsel. And I think she had some authority for it from some other procedure that she looked at and asked if I would do it. I was, quite frankly, a little reluctant to do it at first until I looked into it more. But I did do it. Yes, Mr. Todd could argue it, but Mr. Todd also, I think, would have been a little bit in a conflict because still you have to look at what the underlying issue is. And, you know, his version of what happened, as you heard him argue here, is still different than Comer's. Did the judge indicate that the State was not competent to represent the State in determining that Comer was competent? Was there anything like that? I kind of wonder why. You know, we have a double barrel going. I can't answer that question because I wasn't part of that. I just kind of, I came on a little bit after those decisions were made, Your Honor. Thank you very much. Your Honor, maybe I can shed a little light based on my understanding of that particular proceeding. We were adversaries to Mr. Comer. And on his voluntariness issue, it would be inappropriate for us to be sort of representing him. And the, our, at the hearing, our, the person who was most active in the hearing from the State's standpoint was the person who represented the Department of Corrections to make sure that the record was accurate concerning the Department of Corrections. Special counsel who had a relationship with Mr. Comer and habeas counsel who also were able to talk to Mr. Comer periodically. On this, on the voluntariness issue, it was primarily between those two parties, and the State was simply making sure the record was correct as far as the Department of Corrections was concerned. That's my understanding of the proceedings. Thank you. What do you mean between habeas counsel and, and what do they call you guys? Habeas counsel. And special counsel. Oh, you're habeas counsel and special counsel. Mm-hmm. I see. So you were adversaries, were you? Some ways we're adversaries, some ways we're on the same side. Some ways we're adversaries, some ways we're on the same side. We have been in the middle, and that's probably good why the third counsel was appointed, because there are different conflicts out there, and that cleaned up a lot of issues by having us come in independently. All right. Anything else from anybody? All right. The matter will stand submitted, and the court will adjourn. All rise.
judges: Pregerson, Ferguson, Rymer